## Kelly v. Commonwealth.

(Decided January 13, 1925.)

Appeal from Greenup Circuit Court.

1.   Intoxicating Liquors—Evidence Held to Sustain Conviction for Manufacturing.—Evidence held to sustain conviction for unlawful manufacture.

2. Criminal Law—Evidence of Defendant's Possession of Pistol when Arrested for Unlawful Manufacture of Liquor Held Part of Res Gestae and Not Inadmissible Proof of Other Offense.—Evidence that defendant, charged with unlawful manufacture of intoxicating liquors, on being arrested was searched and found to possess 38-caliber bullets, and when asked what he had done with pistol said he had thrown it where it was later found, held part of res gestae and not inadmissible as proof of other offense.

L. D. BRUCE for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

Charlie Kelly was convicted of the offense of unlawfully manufacturing spirituous liquor. On this appeal he insists that the lower court erred in the admission of evidence, and in its instructions to the jury, and also that the verdict is not supported by the evidence.

The facts are: Acting on information, the sheriff and a *posse* raided a moonshine distillery plant and captured three moonshine stills having a capacity of 300, 200 and 150 gallons respectively, all located at the same spot; also several hundred gallons of moonshine whiskey and about 70 barrels of mash. The plant was located in a plum thicket not far from an abandoned farm house.

The officers approached and hearing a conversation in the thicket made a rush, finding there four men, including the defendant, Charles Hutchison, Bill Cravens and Stanley Morris. The last two were sitting on a bench while Kelly and Hutchison were standing on either side of a still then in operation. Cravens and Morris submitted to arrest, but Kelly and Hutchison ran away, pursued by the officers, who after a spirited chase captured them both.

When arrested and searched Kelly had a number of 38 caliber cartridges in his pocket. He was asked what he had done with the pistol and answered that he "had thrown it down back there." The officers retraced their steps and found a 38 pistol, which the cartridges fitted.

Appellant claims that he runs a garage in the city of Ashland. On the morning in question his friend, Mr. Hutchison, requested him to take his machine and drive him (Hutchison) out to view a farm he had purchased the day before. Upon reaching the farm they got out of the

machine and Hutchison asked him to walk to the top of the hill between a quarter and a half mile distant to view the farm; on that inspection they discovered the still; that he had no interest in it and knew nothing about it in any way; that upon its discovery Hutchison informed those present that it must be removed; that he and Hutchison were standing there talking at the time of the arrival of the officers; that he was excited by its discovery and the officers began shooting and alarmed him, which was the cause of his running.

Hutchison testifies that he is engaged in the real estate business in Ashland and was the owner of the farm adjoining that upon which the still was located and for some time had been familiar with the value of lands in that vicinity; that there had been some oil development in that neighborhood and on the day previous he had purchased the farm upon which the still was located; that he had made this purchase in the city of Ashland without making an examination of the property; that he had borrowed the money from a local bank to pay the consideration, and the cashier of that institution advised him to go out and inspect it to ascertain the condition of the premises. He had disposed of his own machine prior thereto and for this reason requested Kelly to drive him out to the place, which was some five or six miles from Ashland; that upon arriving at his line they got out of the machine and went over the farm for the purpose indicated; that the house on the newly purchased farm was vacant, and going down beyond it to a plum thicket they discovered the plant mentioned; that he then went to it for the purpose of ordering the operators off his premises and did so, and was still engaged in conversation with them when the officers arrived; that he had no interest in the still and no intimation of its existence until the discovery was thus made; that upon the officers' arrival they began firing their pistols at the crowd and he ran for safety, and in so doing he was shot through the shoulder, but finally dodged behind a tree for his own protection until he could surrender.

Cravens and Morris testified that they were operating the still which had been located at that point for two or three weeks; that neither Hutchison nor Kelly had any interest in or connection therewith.

The officers admitted doing some shooting, but say that nothing of this sort occurred until after Hutchison

and Kelly ran, and that the shooting was done to frighten and stop them, but not aimed at them.

The evidence for the Commonwealth is purely circumstantial and all the eye-witnesses corroborate appellant; yet an inference of appellant's guilt may be drawn from all the facts and circumstances. He and Hutchison were present while the still was in operation. At the approach of the officers they fled. If indeed the still was located at that place without the knowledge or consent of Hutchison and against his will, the natural inference is that he would have welcomed the officers as protectors, and have complained against the real offenders and he and Kelly would have satisfactorily explained their presence instead of fleeing from their sight; hence it became a question as to the credibility of the defense witnesses. While their theory is plausible, and, as stated, was corroborated by the other eye-witnesses, it was for the jury to say whether or not their testimony was to be believed, and under all the facts and circumstances we are not prepared to say that the verdict is so flagrantly against the weight of the evidence as to authorize a reversal.

It is argued that the evidence as to appellant having a pistol at the time was proof of another crime and therefore inadmissible. This position is untenable. It was proper for the officers to search his person after the arrest and the evidence thus discovered as well as that then procured by them without search was part of the *res gestae* and therefore admissible.

The instruction criticised is the one as to reasonable doubt, which was given in the language of the code, a form of instruction that has uniformly been upheld by this court.

Perceiving no error, judgment is affirmed.